## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ISAAC FLORES, et al., | | |
| | Plaintiffs, | |
| v. | | Civil Action No. 25-100-GBW |
| BRIAN EMIG, et al., | | |
| | Defendants. | |

---

Dwayne J. Bensing, Laurence Z. Shiekman, ACLU OF DELAWARE, Wilmington, DE; Laurence Z. Shiekman, Christopher M. Brolley, TROUTMAN PEPPER LOCKE LLP, Philadelphia, PA; Judah H. Rome, TROUTMAN PEPPER LOCKE LLP, Providence, RI; Benjamin S. Geller, TROUTMAN PEPPER LOCKE LLP, Atlanta, GA.

*Counsel for Plaintiffs*

James D. Taylor, Jr., Marisa R. De Feo, Jennifer M. Becnel-Guzzo, SAUL EWING LLP, Wilmington, DE.

*Counsel for Defendants*

## <u>MEMORANDUM OPINION</u>

June 9, 2025
Wilmington, Delaware

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Pending before the Court is Defendants'[1] Motion to Dismiss for Failure to State a Claim (the "Motion") (D.I. 20), which has been fully briefed (D.I. 21; D.I. 23; D.I. 26). For the following reasons, the Court GRANTS-IN-PART and DENIES-IN-PART Defendants' Motion.

## I.    BACKGROUND

The following factual allegations are taken as true for purposes of this Motion.[2] Plaintiffs are six individuals incarcerated at the James T. Vaughn Correctional Center ("Vaughn") in Smyrna, Delaware.[3] D.I. 1, ¶¶ 8-13 (the "Complaint"). Defendants are correctional officers, members of the Delaware Department of Correction's Correctional Emergency Response Team ("CERT"), and the CERT and Vaughn Wardens. Compl. ¶¶ 14-15, 17-29.

At the time of the incidents alleged in the Complaint, the regular housing assignment for all six Plaintiffs was Building 18 at Vaughn. Compl. ¶¶ 35, 54, 79, 96, 127, 146. Building 18 is part of Vaughn's Segregated Housing Unit ("SHU"). Compl. ¶ 30. Each building composing the SHU, including Building 18, has four tiers—A, B, C, and D. Compl. ¶ 31. Each tier has an upper and lower level, and a total of twenty-five (25) single-occupancy cells. Compl. ¶ 32. Between

---

[1] Defendants are Brian Emig, S. Howard (together, the "Warden Defendants"), Correctional Officer Kristin Bartell, Correctional Officer Challis, Captain Coviello, Corporal Todd Koch, Sergeant Mejia, Staff Lieutenant Robert Mock, Correctional Officer Payton, Correctional Officer Spencer, Lieutenant Brian Vanes, Correctional Officer Wiest, Correctional Officer White, Correctional Officer Wilgus, and unidentified John Doe correctional officers (collectively, the "Defendants").

[2] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[3] Plaintiffs are Isaac Flores, Karl Manuel, Tyrone Morris, Darnell Pierce, Brian Snowden, and Jamar Waters (collectively, the "Plaintiffs").

11:00 p.m. and midnight on September 5, 2024, the CERT began entering cells on A-Tier in Building 18. Compl. ¶ 36. The CERT operation proceeded to B-Tier, and then throughout all of Building 18 (the "September 5th Search" or the "Search"). Compl. ¶ 33.

During the Search, CERT members went to the cell of Plaintiff Isaac Flores, ordered Flores to get up off his bunk and strip, joked about his genitals and, without any threat from Flores or warning by the CERT members, pepper-sprayed Flores and punched him so hard that his teeth pierced through his lip. Compl. ¶¶ 38, 40-41. Thereafter, CERT members punched and kicked Flores, and pepper-sprayed him again. Compl. ¶ 43. Flores did not resist or disobey any orders. Compl. ¶ 44. Flores suffered physical and psychological injuries and scarring to his lip. Compl. ¶ 50.

Plaintiff Karl Manuel was in bed when the CERT abruptly began banging on his cell door. Compl. ¶ 56. A CERT member threw a pepper grenade through the food flap in Manuel's door, which hit Manuel in his chest and burned his blanket, before spraying pepper spray into the cell. Compl. ¶ 58. CERT members beat Manuel, digitally sodomized him, cuffed him, stomped on his wrist, and punched him in the mouth, knocking several teeth loose and knocking his denture plate out of his mouth. Compl. ¶¶ 61-62, 64. Manuel suffered serious injuries to his hand, including a broken finger. Compl. ¶ 70. Manuel also suffered serious psychological injuries and lost three teeth. Compl. ¶ 76.

Around 11:00 p.m. on September 5, 2024, Tyrone Morris was asleep in his cell when CERT members woke him. Compl. ¶ 80. CERT also used a pepper grenade on Morris, threw him to the ground, beat him, handcuffed him, and pepper sprayed him again. Compl. ¶¶ 81, 83. Morris sustained injuries to his back, neck, and left wrist, and had to use a wheelchair for several days

following the attack. Compl. ¶ 91. Morris also suffered fear, helplessness, and mental anguish. Compl. ¶ 93.

CERT members assaulted Plaintiff Darnell Pierce, who believes that Defendant Warden Emig was present during, and directed, the assault. Compl. ¶ 100. CERT members stormed into Pierce's cell, threw him onto his bed, choked him with his shirt collar, forcefully struck his tailbone, and repeatedly dared Pierce to fight them. Compl. ¶¶ 102-04. Pierce, who has a heart condition, repeatedly refused. Compl. ¶¶ 105, 106. CERT members strip-searched him, and one officer punched Pierce in the back of the head (Pierce believes it was Warden Emig who struck him). Compl. ¶¶ 108, 109. CERT members taunted him, struck him again, tapped his penis, slammed him around his cell by his neck, and slammed his head against his cell door. Compl. ¶¶ 110-18. Outside his cell, CERT members refused him relief after he complained again about his heart condition. Compl. ¶ 121. Pierce suffered injuries to his head, back, right shoulder, rectum, and tail bone, as well as extreme fear and anxiety. Compl. ¶ 124.

Plaintiff Brian Snowden was admitted at Vaughn from Virginia the day before the September 5, 2024 Search. Compl. ¶ 126. Sometime after 11:00 p.m., as Snowden was lying on his stomach in bed, with his hands behind his back, CERT members stormed into his cell, ordered him to strip, pepper sprayed him without warning or provocation, cuffed him, attempted to force an item in his rectum, slammed him to the floor and punched him, and threatened to throw him down a staircase. Compl. ¶¶ 128-32. When Snowden tried to alleviate the pepper spray burning his genitals, CERT members pepper sprayed him again, soaking his face, hair, and beard, and then berated him. Compl. ¶ 134. Snowden suffered severe burning from the pepper spray and serious pain in his rectum. Snowden suffers from extreme shame and mental anguish. Compl. ¶ 143.

Although Plaintiff Jamar Waters was assigned to Building 18, on September 5, 2024, he was housed in Building 21 in a psychiatric close observation ("PCO") cell due to a mental health crisis. Compl. ¶ 146. Waters' temporary housing re-assignment, designed for safety and security, did not prevent the CERT from seeking him out and assaulting him. At approximately 1:30 a.m. on September 6, 2024, while Waters was sound asleep, CERT arrived at his PCO cell. Compl. ¶ 148. Without knocking, CERT members stormed into Waters' cell and forcefully grabbed him out of bed. Compl. ¶ 149. CERT members threw Waters against the wall, punched him repeatedly, smashed his head into the wall, cuffed him, and placed a finger in his rectum. Compl. ¶¶ 150-152. Waters suffered a bloody head wound, bruises and scratches on his chest, and pain in his shoulders and neck. Compl. ¶ 161. Waters also suffers PTSD from the traumatic events, and has trouble sleeping, fear, and anxiety. Compl. ¶ 163.

None of the Plaintiffs were decontaminated after CERT members excessively and unnecessarily pepper sprayed them. Compl. ¶¶ 67, 90, 139, 190. None of the Plaintiffs resisted or disobeyed any orders given by CERT members. Compl. ¶¶ 44, 68, 87, 119, 140, 160.

Plaintiffs filed this Complaint on January 23, 2025. D.I. 1. Plaintiffs filed a Motion for Preliminary Injunction and Request for Hearing on February 4, 2025. D.I. 3. On March 28, Plaintiffs filed a Motion to Expedite Discovery (D.I. 18) and a Motion to Consolidate Cases (D.I. 19), and Defendants filed this Motion. D.I. 20. Defendants filed a Motion to Stay Discovery on April 22, 2025. D.I. 30. The motions filed by Plaintiffs and Defendants remain pending before this Court.

## II.    JURISDICTION AND LEGAL STANDARD

### A.    Jurisdiction

This Court has jurisdiction under 28 U.S.C. § 1331.

**B.**     **Rule 12(b)(6) Motion to Dismiss**

Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a complaint must be dismissed if it "[fails] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a complaint. *E.I. DuPont de Nemours & Co. v. Great Lakes Chem. Corp.*, 383 F. Supp. 2d 642, 644-45 (D. Del. 2005). "To survive a Rule 12(b)(6) motion, a complaint must set forth enough factual allegations to 'state a claim to relief that is plausible on its face.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When reviewing a motion to dismiss under Rule 12(b)(6), the Court must "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Additionally, the Court must construe all allegations and facts in the light most favorable to the non-movant plaintiff and resolve all reasonable inferences in the plaintiff's favor. *See Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005); *see also Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989). The Court, however, need not accept "bald assertions," "unsupported conclusions," or "unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997) (internal quotation marks and citations omitted). Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks and citations omitted).

## III.    DISCUSSION

Defendants claim that the Plaintiffs' Complaint falls short of pleading violations of Plaintiffs' constitutional rights under either the Eighth or the Fourteenth Amendments arising from the September 5th Search.  In particular, Defendants seek to dismiss Plaintiffs' counts of use of excessive force under the Eighth and Fourteenth Amendments against all Defendants and failure to supervise under the Eighth and Fourteenth Amendments against Warden Defendants Emig and Howard.  For the following reasons, the Court dismisses the claims against Defendants Challis, Payton, Spencer, Wilgus, Bartell, Mejia, Mock, White, Wiest, Vanes, and Howard.  With respect to Defendants Emig, Coviello, Koch, and the unidentified John Doe correctional officers, the Court denies the Motion.

### A.    Plaintiffs State a Claim for Relief

Defendants contend that the Plaintiffs cannot state plausible claims for relief since the Complaint merely sets forth "threadbare recitals of the elements of a cause of action" and conclusory allegations.  D.I. 21 at 7 (quoting *Iqbal*, 556 U.S. at 678).  In the Defendants' view, the Plaintiffs failed to plead "enough facts to state a claim to relief that is plausible on its face," and the claim must be dismissed.  D.I. 21 at 6 (quoting *Twombly*, 550 U.S. at 570).

This argument, however, fails because it ignores the myriad of facts that Plaintiffs plead. In the corresponding section of Defendants' brief, Defendants do not point to any particular claim that lacks sufficient facts.  In any case, as the remaining sections of this opinion show, Plaintiffs have pleaded sufficient facts for each claim.

### B.    Defendants Fail to Show that Plaintiffs Did Not Exhaust Available Administrative Remedies

Defendants assert that the Plaintiffs' claims must fail because Plaintiffs have not fully exhausted their administrative remedies.  D.I. 21 at 7.  The Prison Litigation Reform Act ("PLRA")

provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). According to the Defendants, the plaintiffs did not exhaust their administrative remedies because Flores' grievance was returned unprocessed (Compl. ¶ 52), Snowden filed a PREA complaint which the prison claimed was unsubstantiated (Compl. ¶ 69), and the other four plaintiffs supposedly failed to utilize any internal grievance or complaint process. D.I. 21 at 7.

The United States Supreme Court has stated that the PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Booth v. Churner*, 206 F.3d 289, 296 (3d Cir. 2000) ("[E]xcessive force actions are . . . subject to the exhaustion requirements set forth in [the PLRA]."). Under the PLRA, "an inmate must exhaust [administrative remedies] irrespective of the forms of relief sought and offered through administrative avenues." *Rahim v. Holden*, 882 F. Supp. 2d 638, 641 (D. Del. 2012) (citations omitted). Federal courts have explained that proper "exhaustion" requires the plaintiff-prisoner to "complete the administrative review process in accordance with the applicable rules, including deadlines, as a precondition to bringing suit in federal court." *Simpson v. CMS*, 559 F. Supp. 2d 481, 483 (D. Del. 2008) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004) ("[P]rison grievance procedures supply the yardstick for determining what steps are required for exhaustion.").

A failure-to-exhaust defense, however, is an affirmative defense, and Plaintiffs are not required to plead and demonstrate exhaustion. *Jones v. Block*, 549 U.S. 199, 211-12 (2007).

Nevertheless, Third Circuit precedent allows Defendants to raise "failure to exhaust as the basis for a motion to dismiss in appropriate cases." *Ray v. Kertes*, 285 F.3d 287, 295 n.8 (3d Cir. 2002); *see also Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002) (deferring on the question of under what circumstances a defendant may carry its burden of proving failure to exhaust on the pleadings).[4]

Defendants' failure to exhaust defense fails for three reasons. First, based on the Complaint, it's not clear that plaintiffs failed to exhaust available administrative remedies. For instance, this district has held that the instructions for the "return of unprocessed grievance" at Vaughn are "confusing at best." *Fatir v. Phelps*, No. 18-cv-1549-CFC, 2021 WL 827142, at *8 (D. Del. Mar. 4, 2021) (quoting *Rahim, v. Holden*, 882 F. Supp. 2d 638, 643 (D. Del. 2012)). In *Fatir*, the court denied the defendant's motion to dismiss for failure to exhaust because the defense did not show it provided guidance to the plaintiff on how to resolve the plaintiff's unprocessed grievance. *Id.* Likewise, here, there is nothing in the record that shows that Plaintiff Flores had instructions on how to proceed with his unprocessed grievance. Moreover, nothing in the Complaint or other relevant filings actually show the other Plaintiffs failed to exhaust administrative remedies. Because failure to exhaust is an affirmative defense, Plaintiffs are not required to plead facts relating to exhausting administrative remedies in the Complaint.

Second, a failure-to-exhaust defense must show that the administrative remedies were actually "available." *Ross v. Blake*, 578 U.S. 632, 642 (2016). The Supreme Court has held that, under the PLRA, an inmate is required to exhaust only those grievance procedures that are "capable of use." *Id.* (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). If the defendant has established

---

[4] Judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury. *Small v. Camden Cnty.*, 728 F.3d 265, 271 (3d Cir. 2013).

that the inmate failed to resort to administrative remedies, "the onus falls on the inmate to show that such remedies were unavailable." *Rinaldi v. U.S.*, 904 F.3d 257, 268 (3d Cir. 2018) (citing *Tuckel v. Grover*, 660 F.3d 1249, 1253-54 (10th Cir. 2011)).

Here, even if the Plaintiffs failed to exhaust their administrative remedies, Plaintiffs sufficiently plead that those remedies were not available.  In the Complaint, Plaintiffs allege that the "process by which incarcerated individuals in Delaware register complaints against DOC staff for alleged uses of excessive force grievances is so flawed that it does not provide any meaningful administrative remedy." Compl. ¶ 169. The Defendants do not point to anything in "the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference" that would otherwise indicate that the administrative remedy was available to plaintiffs. *London v. Evans*, No. 19-cv-559-MN, 2020 WL 4748065, at *2 (D. Del. Aug. 17, 2020) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)) (granting a motion to dismiss for failure to exhaust administrative remedies because exhibits attached to the Amended Complaint indicated the remedies were available).

Third, courts often defer on this issue if it appears complex based on the parties' submissions. *See Green v. Poorman*, No. 20-cv-85-RGA, 2020 WL 4201854 (D. Del. July 22, 2020) (denying a motion to dismiss for failing to exhaust all administrative remedies while also granting a motion to conduct an evidentiary analysis on the issue of exhaustion); *see also Small*, 728 F.3d at 271 ("Although the availability of administrative remedies to a prisoner is a question of law, . . . it necessarily involves a factual inquiry.").  Having considered the allegations in the Complaint and the parties' arguments, the Court finds it wise to allow discovery on this issue before issuing a ruling. *See Clark v. Pierce*, No. 18-cv-1563-CFC, 2020 WL 4794009, at *2 (D.

Del. Aug. 18, 2020) (denying a motion to dismiss for failure to exhaust to allow limited discovery to resolve the issue).

## C.    Excessive Force Claims

"[T]he pivotal inquiry in reviewing an inmate's § 1983 claim for excessive force is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Ricks v. Shover*, 891 F.3d 468, 480 (3d Cir. 2018) (quoting *Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002)).  In conducting this analysis of the officer's intent, courts consider five factors: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of the forceful response." *Id.* (quoting *Smith*, 293 F.3d at 649).  The objective component of the excessive force inquiry requires that "the inmate's injury was more than *de minimis*." *Id.* (quoting *Fuentes v. Wagner*, 206 F.3d 335, 345 (3d Cir. 2000)).

Defendants contend that the Plaintiffs' excessive force claims must be dismissed for three reasons.  First, the Defendants assert that the Plaintiffs' excessive force claims based on the Fourteenth Amendment fail as a matter of law.  D.I. 21 at 10 n.9.  Second, Defendants claim that Plaintiffs did not sufficiently plead Defendants' personal involvement.  D.I. 21 at 10.  Third, Defendants contend that Plaintiffs do not plead facts that show deliberate indifference by the Defendants.  The Court will address each of these arguments in turn.

### 1.    Fourteenth Amendment Claims

Defendants assert that Plaintiffs' Fourteenth Amendment excessive force claims fail as a matter of law because the Plaintiffs do not plead that they are pre-trial detainees.  D.I. 21 at 10 n.9.  Defendants cite to a Third Circuit case that states that "sentenced prisoners are protected from only

punishment that is 'cruel and unusual,' while pretrial detainees are protected from any punishment." *Murray v. Keen*, 763 Fed. Appx. 253, 255 (3d Cir. 2019) (unpublished) (quoting *Hubbard v. Taylor*, 399 F.3d 150, 166-67 (3d Cir. 2005)). Because the Plaintiffs are sentenced prisoners, Defendants contend that Plaintiffs' sole protection is from the Eight Amendment's prohibition on cruel and unusual punishment and that the Fourteenth Amendment does not apply.

However, Defendants get the logic backwards. "[P]retrial detainees are protected by the due process clause of the fifth and fourteenth amendments, not the cruel and unusual punishment clause of the eighth amendment." *Williams v. Mussomelli*, 722 F.2d 1130, 1133 (3d Cir. 1983) (citing cases).[5] The inverse does not apply for sentenced prisoners, however, as "some uncertainty remains as to whether a particular occurrence more properly comes within the due process clause or the eighth amendment." *Id.*; *see also Tolliver v. Johnson*, 889 F. Supp. 157, 159 n.2 (D. Del. 1995) (not distinguishing between plaintiff's Eighth Amendment and due process claims when both extend the same protection). Since the Defendants cite no cases that illustrate why this excessive force claim more properly comes within the Eighth Amendment instead of the Due Process Clause, their argument fails.

## 2.    Lack of Personal Involvement by the Defendants

Defendants claim that Plaintiffs did not sufficiently plead Defendants' personal involvement. D.I. 21 at 10. In a 42 U.S.C. § 1983 ("Section 1983") action, a defendant "must have personal involvement in the alleged wrongdoing." *Evancho*, 423 F.3d at 353 (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988)). Defendants contend that the Complaint

---

[5] The inapplicability of the Eighth Amendment to pretrial detainees does nothing to diminish pretrial detainees' rights because they "are entitled to *at least* as much protection as convicted prisoners, so the protections of the Eighth Amendment would seem to establish a floor of sorts." *Hubbard*, 399 F.3d at 165 (emphasis in original) (quoting *Kost v. Kozakiewicz*, 1 F.3d 176, 188 n.10 (3d Cir. 1993)).

lacks "allegations of personal involvement" that are "sufficiently pled" with regard to each Defendant. D.I. 21 at 11 (quoting *Dennis v. Boulos*, No. 21-cv-655-GBW, 2023 WL 4488981, at *5 (D. Del. July 12, 2023)).

To adequately plead a violation of Section 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual action, has violated the Constitution." *Clark v. Coupe*, No. 17-cv-66-RGA-MPT, 2018 WL 6831166, at *4 (D. Del. Dec. 28, 2018) (quoting *Iqbal*, 550 U.S. at 676) , *report and recommendation adopted in part, rejected in part*, No. 17-cv-00066-RGA, 2019 WL 1349484 (D. Del. Mar. 26, 2019), *amended on reconsideration*, No. 17-cv-00066-RGA, 2019 WL 2098358 (D. Del. May 14, 2019), and *rev'd and remanded*, 55 F.4th 167 (3d Cir. 2022). Because Section 1983 cases often include government actors sued in their individual capacities, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Id.* (emphasis in original) (citation omitted). The Court will examine Defendants' argument with respect to each Defendant.

a.    **Defendants Challis, Koch, Payton, Spencer, and Wilgus**

Defendants assert that the Complaint lacks sufficient facts to show personal involvement of Defendants Challis, Koch, Payton, Spencer, and Wilgus because the Complaint merely pleads that these Defendants were "involved." D.I. 21 at 11. For Defendants Challis, Payton, Spencer, and Wilgus, the only language that identifies them with regard to the incident was that they were "present" (Compl. ¶¶ 18, 23, 24, 28) and that they were "involved in the attack" (Compl. ¶ 88). There are no facts to support an excessive force claim against Defendants Challis, Koch, Payton, Spencer, and Wilgus since the Complaint lacks, *inter alia*, that they caused an injury. Therefore, with respect to Challis, Payton, Spencer, and Wilgus, Plaintiffs have failed to plead "enough facts

13

to state a claim to relief that is plausible on its face" for excessive force. *Twombly*, 550 U.S. at 570.

However, for Defendant Koch, the Complaint sufficiently alleges a claim for excessive force. First, Koch is alleged as the individual who threw the pepper grenade into Manuel's cell through the food flap. Compl. ¶ 63. Second, Pierce believes that Koch was the one that hit him in the pelvis. Compl. ¶ 111. These allegations are sufficient to support a conclusion, at this stage, of personal involvement from Defendant Koch. Plaintiffs also provide other facts that adequately plead an excessive force claim, such as that use of force was unnecessary because Defendants did not de-escalate. Compl. ¶ 192. Thus, Plaintiffs adequately plead Koch's personal involvement for the excessive force claim.

b.    **Defendants Bartell, Mejia, and Mock**

Defendants contend that the Complaint lacks sufficient facts to show personal involvement of Defendants Bartell, Mejia, and Mock. Defendants highlight that the Complaint merely pleads that Defendants Bartell and Mejia were "present" and that Defendant Mock ordered Plaintiff Flores to get of his bunk and strip. D.I. 21 at 11. Defendants are correct. The only language that identifies these Defendants as part of the incident was that they were "present" (Compl. ¶¶ 17, 21, 22, 159) and that Defendant Mock "ordered Flores to get up off his bunk and strip" (Compl. ¶ 38). There are no facts to support an excessive force claim against Defendants Bartell, Mejia, and Mock since the Complaint lacks, *inter alia*, that they caused an injury. Therefore, with respect to Bartell, Mejia, and Mock, Plaintiffs have failed to plead "enough facts to state a claim to relief that is plausible on its face" for excessive force. *Twombly*, 550 U.S. at 570.

c.    **Defendants White and Wiest**

Defendants claim that the Complaint provides no allegations that show personal involvement of Defendants White and Wiest in the September 5th Search. D.I. 21 at 11.

Defendants are correct. For Defendant White, the Complaint alleges that he was "present" at Manuel's cell. Compl. ¶¶ 27, 63. With respect to Defendant Wiest, the Complaint merely alleges that he was "present" in Flores' cell. Compl. ¶¶ 26, 37. There are no facts to support an excessive force claim against Defendants White and Wiest since the Complaint lacks, *inter alia*, that they caused an injury. Therefore, with respect to White and Wiest, Plaintiffs have failed to plead "enough facts to state a claim to relief that is plausible on its face" for excessive force. *Twombly*, 550 U.S. at 570.

**d.    Defendants Coviello and Vanes**

Defendants claim that the Plaintiffs do not sufficiently allege personal involvement for Defendants Coviello and Vanes. Defendants contend that the Complaint merely alleges that Defendant Coviello "supervised" and that Defendant Vanes ordered CERT to perform the coordinated Search. D.I. 21 at 11. Defendants assert that the Court must dismiss the excessive force claims against these Defendants because "liability cannot be predicated solely on the operation of respondeat superior." *Evancho*, 423 F.3d at 353 (quoting *Rode*, 845 F.2d at 1207).

Defendants' contention for Defendant Coviello is incorrect. The allegations that Defendant Coviello acted as supervisor and was present during the incident are sufficient allegations of personal involvement. "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207. In order for a supervisory public official to be held liable for a subordinate's constitutional tort, the official must either be the "moving force [behind] the constitutional violation" or exhibit "deliberate indifference to the plight of the person deprived." *Sample v. Diecks,* 885 F.2d 1099, 1118 (3d Cir. 1989) (citing *City of Canton v. Harris,* 489 U.S. 378, 389 (1989)). "[A] supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his

15

subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Detention Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

Here, Plaintiffs sufficiently allege that Defendant Coviello may be liable in his role as supervisor. Plaintiffs plead that Defendant Coviello "supervised" the excessive force violations against Plaintiff Morris. Compl. ¶ 88. By being present while his subordinates violated Plaintiff Morris' constitutional rights, the Court can infer that Defendant Coviello "acquiesced in his subordinates' violations." *See A.M. ex rel. J.M.K.*, 372 F.3d at 586 (reversing summary judgment for defendants because the plaintiff presented sufficient evidence to create a genuine issue of material fact whether the defendants had "knowledge of and acquiescence" of their subordinates' constitutional violations); *see Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000) ("[Courts] must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." (citing *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.1996))).

Contrary to Defendants' arguments, the allegations against Defendant Coviello amount to more than a claim of respondeat superior because Plaintiffs provide allegations of Defendant Coviello's personal involvement through his acquiescence. *Cf. Evancho*, 423 F.3d at 353-54 (dismissing a claim against the defendant because it rested on the doctrine of respondeat superior since the complaint did not allege that the defendant had "personally directed" the constitutional violation or "knew of and acquiesced in it").

However, Defendants' argument regarding Defendant Vanes is correct because Plaintiffs do not allege Defendant Vanes' personal involvement. The only allegation pled against Defendant Vanes is that he gave the order and directed the search. Compl. ¶ 25. Unlike Defendant Coviello, there are no allegations that Defendant Vanes had "actual knowledge of and acquiesced" to the constitutional violations. *Rode*, 845 F.2d at 1207. Without any allegations of personal

16

involvement, Plaintiffs' claim against Defendant Vanes rests on respondeat superior, which requires dismissal. *Evancho*, 423 F.3d at 353-54.

e.    **Plaintiff Pierce's Beliefs of Involvement of Defendants Emig and Koch Are Permissible**

Defendants contend that Plaintiffs did not plead the personal involvement of Defendants Emig and Koch because Plaintiff Pierce only "believes" those Defendants were involved. D.I. 21 at 11.  For example, Plaintiff Pierce believes Warren Emig "grabbed Pierce's neck and punched him in the back of the head."  Compl. ¶ 109.  Plaintiff Pierce further believes that Defendant Koch "tried [] to hit Pierce in the stomach but instead hit him in the pelvis."  Compl. ¶ 111.

The Court disagrees with Defendants' contention.  The Third Circuit has explained that "pleading upon information and belief is permissible '[w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control.'"  *McDermott v. Clondalkin Group, Inc.*, 649 Fed. Appx. 263, 267-68 (3d Cir. 2016) (unpublished) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir.2002)); *see also Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 107 n.31 (3d Cir. 2015) (collecting cases from several other Courts of Appeals that accept allegations "on information and belief" when the facts at issue are peculiarly within the defendant's possession).  Here, it is clear that the information about the identities of the Defendants is within the Defendants' knowledge or control "because the CERT operates in full riot gear, which obscures both their faces and their name badges."  Compl. ¶ 29.

f.    **John Doe Defendants**

Defendants also contend that the Court should dismiss Plaintiffs' excessive force claims where the "Plaintiffs do not identify with any specificity who allegedly punched them, kicked them or sprayed them with OC spray."  D.I. 21 at 12.  Defendants cite the out-of-district case of *Geter v. Dauphin Cnty. Prison Authorities*, wherein the court dismissed the plaintiff's excessive force

17

claim because the plaintiff did "not identify any of the correctional officers that punched or kicked him." No. 18-cv-1579, 2019 WL 522693, at *5 (M.D. Pa. Feb. 11, 2019).

However, *Geter* only dealt with named defendants where the alleged facts were not sufficient for excessive force claims against them. In the Third Circuit, "[u]se of John Doe defendants is permissible in certain situations until reasonable discovery permits the true defendants to be identified." *Blakeslee v. Clinton Cnty.*, 336 Fed. Appx. 248, 250 (3d Cir. 2009) (unpublished) (citation omitted); *see also Bracy v. Doe*, No. 22-cv-1054-SRF, 2024 WL 4333093, at *5 (D. Del. Sept. 27, 2024) (denying a motion to dismiss for not identifying officers by name because "Section 1983 suits against unnamed officers routinely proceed to discovery if sufficient facts are asserted and it is likely that the Doe Officers can be identified during discovery"). Thus, Defendants' contention fails.

**3.    Plaintiffs Plead Deliberate Indifference by the Defendants**

Defendants further contend that the Court should dismiss the Plaintiffs' excessive force claims by asserting that the Plaintiffs did not plead "facts to suggest the named Defendants acted maliciously towards the Plaintiffs." D.I. 21 at 12. Excessive force claims under the Eighth Amendment are specifically concerned with the unnecessary and wanton infliction of pain in penal institutions. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). "Where a prison security measure is undertaken to resolve a disturbance, . . . the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 320-21 (cleaned up). Defendants claim that Plaintiffs do not plead facts sufficient to meet the subjective intent standard of "maliciously and sadistically us[ing] force to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

Defendants are incorrect for multiple reasons. First, Plaintiffs plead that there was no need to use force at all because Plaintiff Waters was sound asleep and the remaining Plaintiffs were complying with the Search. Compl. ¶¶ 39, 57, 81, 101, 129, 148. As a result, the force the Defendants used could not have been "applied in a good faith effort to maintain or restore discipline." *Whitley*, 475 U.S. at 320. Second, Plaintiffs have pled facts where the Court can infer the Defendants mental state "from conducts such as harassing comments, or an overly invasive search in violation of facility policy." *See Ricks*, 891 F.3d at 475. The Complaint alleges, *inter alia*, that:

- Defendants pepper sprayed Plaintiff Flores at close range in violation of DOC policy, punched him in the mouth causing his teeth to pierce his lips, and then repeatedly punched and kicked him on the floor while shouting, "You're not laughing no more!" (Compl. ¶¶ 41, 42);

- Defendants threw a pepper spray cannister, without justification, into Plaintiff Manuel's cell that struck him in the chest, beat him, digitally sodomized him, stomped on his wrist which caused injury, and punched him in the mouth that knocked several teeth and his denture plate loose (Compl. ¶¶ 58, 59, 61, 62);

- Defendants also threw a pepper spray cannister without justification into Plaintiff Morris' cell, beat him to cause facial injuries, and pepper sprayed him at close range (Compl. ¶¶ 81-84);

- Defendants struck Plaintiff Pierce's tailbone causing numbness, one Defendant told him, "I'm going to give you an opportunity to fight me," Defendant Emig punched him in the back of his head, another Defendant taunted Pierce as a gangster, and Defendant Koch went

19

to hit Pierce in the stomach but hit his pelvis, all which caused physical injuries (Compl. ¶¶ 103-04, 109-11, 124);

- Defendants pepper sprayed Plaintiff Snowden twice at close range in violation of DOC policy, punched him in the face, and told him to "suck it up and swallow it, fa\*\*ot." (Compl. ¶¶ 129, 132-33, 135); and

- Defendants punched Plaintiff Waters in the forehead, chin, and body, smashed his head against a wall causing a headwound, and told him, "Ok, we're gonna fuck you up." (Compl. ¶¶ 151, 155, 161).

From these allegations, the Court can infer a mental state that force was applied not "in a good faith effort to maintain or restore discipline" but "maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. at 320-21; *cf. Winn v. Delaware*, No. CIV.A. 02-34, 2003 WL 22415872, at \*3 (D. Del. Sept. 30, 2003) (dismissing a claim for excessive force because the "[p]laintiff's misconduct, as described in his complaint, appears to be disruptive to the general prison population," thus necessitating force to restore discipline).

Defendants make three arguments for why these alleged facts do not amount to a malicious or sadistic mindset, but all three arguments are unavailing. First, it is inaccurate for Defendants to claim that the use of pepper spray is not an Eighth Amendment violation. As the Third Circuit case that the Defendants cite provides, "[t]he use of mace, tear gas or other chemical agent of the like nature *when reasonably necessary* . . . does not constitute cruel and inhuman punishment." *Passmore v. Ianello*, 528 Fed. Appx. 144, 147 (3d Cir. 2013) (unpublished) (emphasis added) (quoting *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir.1984)). Because the Plaintiffs have adequately pled that pepper spray was not reasonably necessary, *Passmore* does not bar Plaintiffs' excessive force claims. *Geter*, another case Defendants cite for this argument, actually states the

opposite of what Defendants claim: "it [pepper spray] can, in some instances, amount to a constitutional violation." *Geter*, 2019 WL 522693, at *6. And again, unlike the Plaintiffs in this case, the plaintiffs in *Geter* and the other cases cited by the Defendants failed to provide any factual matter as to the defendant's mental state. *Id.*

Second, Defendants are wrong that the Defendants' words cannot evince the Defendants' subjective intent. D.I. 21 at 14. Defendants cite *Spears v. Curcillo*, No. 13-cv-3053, 2016 WL 5461968 (M.D. Pa. Sept. 29, 2016), but the full language of that case betrays the Defendants' cause: "It is well-settled that verbal threats or taunts, *standing alone*, do not violate the Eighth Amendment." *Id.* at 8 (emphasis added). Here, Plaintiffs are not asserting verbal threats and taunts alone. *See Dunbar v. Barone*, 487 Fed. Appx. 721, 723 (3d Cir. 2012) (unpublished) ("[V]erbal threats or taunts, *without more*, are not sufficient to constitute a violation of the Eighth Amendment" (emphasis added) (citations omitted)).

Third, Defendants also contend that the claims that the Defendants touched the Plaintiffs' penis and rectum do not amount to an excessive force claim. D.I. 21 at 14 n.11. But again, the Defendants' cited case law states the opposite:

> Absent a legitimate penological purpose, the type of touching involved in, for instance, a body-cavity search, would be undoubtedly cruel and unusual. And a desire to humiliate the inmate or gratify the officer—*inferred through the officer's conduct*—is a reasonable way to distinguish between invasive touching that is permitted by law to ensure safety and that which is not.

*Ricks*, 891 F.3d at 476 (emphasis added). This case language defeats Defendants' argument in two ways. First, Plaintiffs plead that there was not a legitimate penological purpose to the touching of the penis and rectum. Compl. ¶ 113, 152. Second, the officers' conduct around this touching allows the Court to infer a desire to humiliate the inmate. Compl. ¶¶ 40, 113.

**D.      Failure to Supervise Claim**

Defendants assert that the Plaintiffs' failure to supervise claims must be dismissed for two reasons.  First, Defendants claim that Plaintiffs do not sufficiently plead Defendants' personal involvement.  D.I. 21 at 15.  Second, Defendants contend that Plaintiffs do not plead facts that show deliberate indifference by the Defendants.  The Court will address each of these arguments in turn.

**1.      Personal Involvement by the Warden Defendants**

Defendants claim that the Plaintiffs cannot establish a failure to supervise claim because Plaintiffs fail to allege the personal involvement of the Warden Defendants.  D.I. 21 at 15.  Because liability under Section 1983 cannot be predicated solely on *respondeat superior*, Defendants claim that a lack of personal involvement is fatal to the Plaintiffs' failure to supervise claim.  *Id.* (citing *Evancho*, 423 F.3d at 353).  According to Defendants, Plaintiffs only provide "broad generalized allegations" that the Warden Defendants were responsible for the officers' actions and failed to discipline those officers.  *Id.* at 16.

For Defendant Emig, Plaintiffs adequately plead personal involvement.  The Complaint pleads that Defendant Emig was at Plaintiff Pierce's cell, grabbed his neck, and punched him in the back of the head.  Compl. ¶¶ 100, 109.  The Complaint further pleads that Defendant Emig gave the greenlight for the Search.  Compl. ¶ 158.

On the other hand, there are no facts that show Defendant Howard's involvement.  The only mentions of Defendant Howard in the Complaint are mere legal conclusions.  For example, the Complaint states that Defendant Howard "either ordered and directed the unconstitutional actions by the CERT [or] observed and supervised those actions without stopping the flagrant CERT attacks."  Compl. ¶ 194.  These threadbare mentions of Defendant Howard stand in stark contrast with the specific factual allegations regarding Defendant Emig.  Unlike with Defendant

22

Emig, there is no specific pleading that Defendant Howard ordered or participated in the Search. At bottom, there are not "enough facts to state a claim to relief that is plausible on its face" for a failure to supervise claim against Defendant Howard. *Twombly*, 550 U.S. at 570.[6]

## 2.    Deliberate Indifference by the Warden Defendants

Defendants also contend that Plaintiffs' failure to supervise claim must fail because of a lack of facts to establish deliberate indifference by the Warden Defendants in their supervisory capacities. D.I. 21 at 17.  To state a claim under the Eighth Amendment for failure to supervise, a plaintiff must allege (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure." *Fox v. Bayside State Prison*, 726 Fed. Appx. 865, 868 (3d Cir. 2018) (unpublished) (quoting *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 317 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*, 575 U.S. 822, 822 (2015)); *see also Sample*, 885 F.2d at 1118.

Defendants' assertion is that the Plaintiffs' claim against Defendant Emig does not meet this standard because Plaintiffs only have "beliefs" that he was present, which are not "facts." D.I. 21 at 18.  As the Third Circuit has explained, however, allegations "on information and belief" are allowed when the facts at issue are peculiarly within the defendant's possession.  *Lincoln Ben. Life*, 800 F.3d at 107 n.31.  What Defendant Emig ordered and what he knew about the Search is clearly a situation where that information is within the Defendants' possession.

---

[6] For the same lack of personal involvement reason, any excessive force claim against Defendant Howard must be dismissed.

Taking into consideration Plaintiffs' "beliefs," the Complaint meets the standard for failure to supervise. First, the procedure conducted within the Search created an unreasonable risk of a constitutional violation of excessive force. *Supra* § III.C. Second, Defendant Emig was aware that the Search created an unreasonable risk because he ordered the Search and was present when it occurred. Compl. ¶¶ 109, 158. Third, Defendant Emig was indifferent to that risk because he has supervisory authority and did nothing to correct the violations. Compl. ¶ 191. Fourth, the constitutional injury of excessive force was caused by the failure to implement the supervisory practice or procedure. In other words, by not stopping the policy violations he saw occur, the Plaintiffs suffered a constitutional injury of excessive force. *See* Compl. ¶¶ 41, 134 (alleging that Defendants' actions violated DOC policy).

**E.    Defendants Are Not Entitled to Qualified Immunity**

Defendants contend that Plaintiffs' claims should be dismissed under the doctrine of qualified immunity. D.I. 21 at 19. To determine whether a government official is entitled to qualified immunity, a court must ask whether (1) the facts put forward by the plaintiff show a violation of a constitutional right and whether (2) the right was clearly established at the time of the alleged misconduct. *Williams v. Sec. Pennsylvania Dept. of Corrections*, 117 F.4th 503, 515 (3d Cir. 2024) (citing *Peroza-Benitez v. Smith*, 994 F.3d 157, 165 (3d Cir. 2021)). Because this opinion has already determined that Plaintiffs' constitutional rights were violated, the remaining question is if the rights were clearly established.

The Third Circuit stated that in the context of correctional officers, "[t]he question in determining the existence of qualified immunity is whether a reasonable person could have believed the defendant's action to be lawful in light of clearly established law and the information he possessed. In deciding the question, the objective facts control and mere allegations of malicious intent may not prevail over those facts." *Henry v. Perry*, 866 F.2d 657, 659 (3d Cir.

24

1989) (internal citations omitted). A plaintiff "can demonstrate that the right was clearly established by presenting a closely analogous case that establishes that the Defendants' conduct was unconstitutional." *Schneyder v. Smith*, 653 F.3d 313, 330 (3d Cir. 2011) (citation omitted).

Based on the facts pled in the Complaint, Plaintiffs provide analogous cases that show that these rights were clearly established. "'[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" *Hope v. Pelzer*, 536 U.S. 730, 737 (2002) (quoting *Whitley*, 475 U.S. at 319). First, regarding the excessive force claim, the Plaintiffs' rights were clearly established because the Supreme Court has laid out a standard of "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 6. Second, regarding the failure to supervise claim, a prison official's "failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). Thus, the Plaintiffs' rights were clearly established and, at this stage, the Defendants are not entitled to qualified immunity.

**F.    Plaintiff Manuel's Claims Are Not Barred Under the Claim Splitting Doctrine**

Finally, Defendants assert that Plaintiff Manuel's claims in this lawsuit are barred under the claim splitting doctrine because he is a named plaintiff in this lawsuit (C.A. No. 1:25-cv-00100-GBW) and another lawsuit (C.A. No. 1:22-cv-01218-GBW). D.I. 21 at 20. The Defendants base this argument on the belief that both lawsuits involve (1) the same court —the U.S. District Court for the District of Delaware; (2) the same defendant(s)—Officer Koch; and (3) the same subject matter—the September 5th Search. Defendants are wrong. The case number of the other case indicates that case began in 2022, more than two years before this case began and before the September 5, 2024 Search occurred. Thus, Defendants' claim splitting argument fails.

## IV.    CONCLUSION

For the foregoing reasons, the Court grants-in-part and denies-in-part Defendants' Motion.

An Order consistent with this Memorandum Opinion will be entered.