## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ISAAC FLORES, et al.,<br><br>        Plaintiffs,<br><br>        v.<br><br>BRIAN EMIG, et al.,<br><br>        Defendants. | Civil Action No. 25-100-GBW |

Dwayne J. Bensing, ACLU OF DELAWARE, Wilmington, DE; Christopher M. Brolley, TROUTMAN PEPPER LOCKE LLP, Philadelphia, PA; Judah H. Rome, TROUTMAN PEPPER LOCKE LLP, Providence, RI; Benjamin S. Geller, TROUTMAN PEPPER LOCKE LLP, Atlanta, GA.

      *Counsel for Plaintiffs*

James D. Taylor, Jr., Marisa R. De Feo, Jennifer M. Becnel-Guzzo, SAUL EWING LLP, Wilmington, DE.

      *Counsel for Defendants*

## <u>MEMORANDUM OPINION</u>

August 22, 2025
Wilmington, Delaware

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Pending before the Court is Plaintiffs'[1] Motion for a Preliminary Injunction ("Plaintiffs' Motion") and Request for Hearing (D.I. 3), which has been fully briefed (D.I. 4; D.I. 8; D.I. 9). Also pending are Plaintiffs' Motion to Expedite Discovery (D.I. 18) and Motion for Rule 65(a)(2) Consolidation of Trial with Hearing on Motion for Preliminary Injunction ("Motion to Consolidate") (D.I. 19). For the following reasons, the Court DENIES Plaintiffs' Motion. Because the Court denies Plaintiffs' Motion, Plaintiffs' Request for Hearing, Motion to Expedite Discovery (D.I. 18), and Motion to Consolidate (D.I. 19) are DENIED-AS-MOOT.

## I.    BACKGROUND

Plaintiffs are six individuals incarcerated at the James T. Vaughn Correctional Center ("Vaughn") in Smyrna, Delaware. D.I. 1 (the "Complaint"), ¶¶ 8-13. Defendants are correctional officers, members of the Delaware Department of Correction's ("DOC") Correctional Emergency Response Team ("CERT"), and the Warden of Vaughn. Compl. ¶¶ 14, 19, 20, 29. According to the DOC, the purpose of CERT is, *inter alia*, to "provide tactical responses during emergency situations." Compl. ¶ 16.

Plaintiffs allege that, on September 5, 2024, the CERT team began a shakedown of the Plaintiffs' cells and, in the process, pepper-sprayed, punched, beat, kicked, sexually assaulted,

---

[1] Plaintiffs are Isaac Flores, Karl Manuel, Tyrone Morris, Darnell Pierce, Brian Snowden, and Jamar Waters (collectively, the "Plaintiffs").

On June 9, 2025, the court entered a Memorandum Opinion (D.I. 38) granting-in-part and denying-in-part Defendants Motion to Dismiss for Failure to State a Claim (D.I. 20). After that Memorandum Opinion dismissed the claim against some named individuals, the Defendants who remain in this case are Brian Emig, Captain Coviello, Corporal Todd Koch, and unidentified John Doe correctional officers (collectively, the "Defendants").

degraded, and humiliated Plaintiffs. D.I. 4 at 4. Plaintiffs further assert these actions violated the DOC policy and Defendants' own training. D.I. 4 at 17. As a result, Plaintiffs allege that Defendants violated Plaintiffs' constitutional rights. Specifically, Plaintiffs assert one count of use of excessive force in violation of the Eighth and Fourteenth Amendments and one count of failure to supervise in violation of the Eighth and Fourteenth Amendments. *See generally* Compl.

Plaintiffs filed their complaint on January 23, 2025. Compl. Plaintiffs seek, *inter alia*, an injunction preventing any future unconstitutional attacks. *Id.* On February 4, 2025, Plaintiffs filed this Motion. D.I. 3. Plaintiffs divide their proposed preliminary injunction into five parts. D.I. 3-1 at 1-2. The first part of the requested injunction would enjoin the DOC from employing CERT against any Plaintiff and any individual incarcerated at Vaughn without first providing a written statement signed, under penalty of perjury, by the Warden of Vaughn, the Warden of CERT, and the Chief of the Bureau of Prisons. The written statement would be required to state that an emergency exists and detail 1) the exact nature of the emergency, including the time and location where it began, which incarcerated individuals are involved in the emergency, and what specific efforts were taken to address the emergency before activating the CERT; 2) the specific connection between the emergency described and the incarcerated individual(s) against whom the CERT is being activated; and 3) the specific reasons why the emergency cannot be addressed by any means other than through action of the CERT. The statement would be required to be filed in the office of the Warden of Vaughn and kept for at least ten years.

The second part of the requested injunction would enjoin Defendants and others from deploying pepper grenades in the individual cell of any person or persons incarcerated at Vaughn. The third part of the requested injunction would enjoin Defendants and others from deploying pepper spray against individuals incarcerated at Vaughn from a distance closer than three feet.

The fourth part of the requested injunction would enjoin Defendants and others from leaving incarcerated individuals who have been pepper sprayed in any locked cell or room without first properly decontaminating them.    The fifth part of the requested injunction would enjoin Defendants and others from deploying the CERT team in any arbitrary, unprovoked, and/or punitive manner. *Id.*

Plaintiffs also filed a Motion to Expedite Discovery on March 28, 2025, contending discovery was necessary "to conduct a full hearing on the Motion for Preliminary Injunction." D.I. 18 at 2.  The same day, Plaintiffs filed the Motion to Consolidate.  D.I. 19.  Defendants filed a Motion to Dismiss on March 28, 2025.  D.I. 20.  On June 9, 2025, the Court granted-in-part and denied-in-part Defendants' Motion to Dismiss, dismissing claims against eleven individuals named in the Complaint. D.I. 38.  However, the Court denied Defendants' request to dismiss the claims against the Defendants that remain in this case. *Id.*

## II.    JURISDICTION AND LEGAL STANDARDS

### A.    Jurisdiction

This Court has jurisdiction under 28 U.S.C. § 1331.

### B.    Preliminary Injunction

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  A party may be granted a preliminary injunction only "upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22 (citation omitted).  To determine whether to grant or deny a preliminary injunction, the court considers whether the moving party would likely succeed on the merits, whether the moving party would suffer irreparable harm without injunctive relief, whether granting the injunction will cause greater harm to the nonmoving party, and whether the injunction serves the public interest. *Holland v. Rosen*, 895 F.3d 272, 285-86 (3d Cir. 2018).  Irreparable harm is harm that "cannot be redressed

4

by a legal or an equitable remedy following a trial." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). The harm must be immediate and not speculative. *See Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992); *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 488 (3d Cir. 2000). The moving party bears the burden of persuasion, and the court may not grant the motion unless the movant satisfies the first two factors. *Holland*, 895 F.3d at 285-86.

## C.    Article III Standing

Article III standing is a component of subject matter jurisdiction that cannot be waived or forfeited. *Associated Builders & Contactors Western Pennsylvania v. Cmty. Coll. of Allegheny County*, 81 F.4th 279, 287 (3d Cir. 2023) (citing to *Burton v. Schamp* 25 F.4th 198, 207 (3d Cir. 2022)). "The Supreme Court has repeatedly described the question of Article III standing as a 'threshold' issue." *Wayne Land & Mineral Grp. LLC v. Del. River Basin Comm'n*, 959 F.3d 569, 575 (3d Cir. 2020) (collecting cases). Article III standing requires the plaintiff to have a personal stake in the case and, thus, guarantees that the federal judicial power is confined to the resolution of cases and controversies. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citation omitted). The plaintiff bears the burden of establishing Article III standing. *Id.* at 430-31.

To establish Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Moreover, to satisfy the injury-in-fact requirement, the injury must be "(a) concrete and particularized" and "(b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted). Since these elements are "not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff

bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561.

Additionally, "[s]tanding is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996). Instead, "a plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 186 (2000). "The same principle applies when there are multiple plaintiffs." *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017). Specifically, "[a]t least one plaintiff must have standing to seek each form of relief requested in the complaint." *Id.* Where a court lacks standing, it may not consider the substantive merits of the case before it. *See Davis v. Wells Fargo*, 824 F.3d 333, 346-47 (3d Cir. 2016).

## III.    DISCUSSION

Plaintiffs claim that they meet the four-part test to obtain an injunction on both of their claims: one for excessive force, and the other for failure to supervise. D.I. 4 at 1. Defendants assert, *inter alia*, that Plaintiffs lack standing for a preliminary injunction. D.I. 8 at 7. In addressing the standing inquiry, Plaintiffs' burden of proof to provide support for each element of standing is the same as it must provide for a preliminary injunction. *See Lujan*, 504 U.S. at 561 (explaining that "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation"); *see also Finkelman v. Natl. Football League*, 877 F.3d 504, 511 (3d Cir. 2017) (stating that when evaluating standing at the motion to dismiss stage of the litigation, "we use the same standard we apply when assessing a motion to dismiss for failure to state a claim."). Thus, to establish standing for a preliminary injunction, Plaintiffs must provide a "clear showing" that standing exists. *See Winter*, 555 U.S. at 22.

6

Below, the Court holds that Plaintiffs lack standing for their proposed preliminary injunction. Thus, the Court denies Plaintiffs' Motion. Since the Court is denying Plaintiffs' Motion, the Court need not address the parties' remaining arguments.

## A.    Plaintiffs Lack Standing for Their Proposed Preliminary Injunction

Plaintiffs lack standing to seek injunctive relief because Plaintiffs have not made a clear showing that they are likely to suffer a future injury. Where, as here, a plaintiff "seeks prospective (forward-looking relief) in the form of an injunction or a declaratory judgment, they must show that they are likely to suffer future injury" in order to satisfy the "imminent" element of the injury-in-fact requirement. *Yaw v. Delaware River Basin Comm'n Del. Riverkeeper Network*, 49 F.4th 302, 318 (3d Cir. 2022) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)). Moreover, for a plaintiff's "future injury [to] be 'imminent,'" it must be "'certainly impending' rather than just merely possible." *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, (2013)).

Here, Plaintiffs do not plausibly allege that they face an imminent threat of harm from Defendants that would justify the equitable relief sought and, therefore, fail to establish Article III standing for the requested form of preliminary injunctive relief. The Court's conclusion is informed by the Supreme Court's decision in *Lyons*. In *Lyons*, the Supreme Court held that the plaintiff, Lyons, lacked standing for a preliminary injunction to bar the city's police officers from using chokeholds. *Lyons*, 461 U.S. at 97-98, 105. For Lyons to establish standing for his proposed preliminary injunction, he had to demonstrate that "he was likely to suffer future injury from use of the chokeholds by police officers." *Id.* at 105. Although Lyons alleged that police officers previously used a chokehold on him, that allegation was not enough to afford standing for a preliminary injunction because that allegation did not establish that he was likely to face a future

injury of being stopped again by police officers and put into a chokehold. *Id.* As the Court explained:

> In order to establish an actual controversy in this case, Lyons would have had not only to allege that he would have another encounter with the police but also to make the incredible assertion either, (1) that *all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation or for questioning or, (2) that the City ordered or authorized police officers to act in such manner.

*Id.* at 105-06 (emphasis in original). Lyons' allegation that "the police in Los Angeles routinely apply chokeholds" fell short of this requirement. *Id.* at 105. The Court also found relevant "that five months elapsed between October 6, 1976, and the filing of the complaint, yet there was no allegation of further unfortunate encounters between Lyons and the police." *Id.* at 108. Thus, the Court held that Lyons did not show that a future injury was likely. *Id.* at 105. In other words, Lyons failed to show that an injury was "certainly impending," and thus, failed to meet the imminence requirement of the injury-in-fact element of standing. *See Yaw*, 49 F.4th at 318.

Pursuant to *Lyons*' holding, a plaintiff seeking injunctive relief "must meet the dual requirements of showing: 1) that it is likely that they again will find themselves in the same or similar circumstances giving rise to the allegedly unconstitutional conduct; and 2) that it is likely that they again will be subjected to the allegedly unconstitutional conduct." *NAACP Delaware v. City of Wilmington*, No. 23-cv-1205-GBW, 2025 WL 1927620, at *4 (D. Del. July 14, 2025) (citing *Travelers Social Club v. Pittsburgh*, 685 F. Supp. 929, 932 (W.D. Pa. 1988)).

As in *Lyons*, Plaintiffs in the instant case seek a preliminary injunction to enjoin an action they suffered in the past. Similar to *Lyons*, the fact that Plaintiffs allege a past injury does not, on its own, establish standing for the requested preliminary injunction against future conduct. *See Lyons*, 461 U.S. at 105. In other words, the alleged past incident does not establish that Plaintiffs are likely to suffer a future injury of the alleged constitutional violations. Rather, to have standing

for the requested preliminary injunction, Plaintiffs must meet the dual requirements of standing for a preliminary injunction: 1) that it is likely that Plaintiffs again will find themselves in the same or similar circumstances giving rise to the allegedly unconstitutional conduct; and 2) that it is likely that Plaintiffs again will be subjected to the allegedly unconstitutional conduct. *See NAACP Delaware*, 2025 WL 1927620, at *4.

Here, Plaintiffs fail to do so. First, Plaintiffs do not demonstrate that they will find themselves in the same or similar circumstances—i.e., that they will face a shakedown again. Although Plaintiffs allege that it is "likely [shakedowns] continue to occur," that allegation alone would not confer standing for a preliminary injunction on Plaintiffs. D.I. 9 at 1. Just because the CERT will continue to implement shakedowns does not necessarily mean that Plaintiffs will be subject to them. Also, similar to the circumstances in *Lyons*, in the more than three months between the alleged incident and the filing of the Complaint in this action, Plaintiffs do not allege that they faced another shakedown. In fact, by the time Plaintiffs submitted this Motion, five months had passed since the original incident with no allegations of an additional shakedown. Thus, Plaintiffs have not sufficiently alleged that they will be subject to a shakedown again.

Additionally, Plaintiffs fail to contend that, even if they did face a shakedown again, it is likely that they again will be subjected to the allegedly unconstitutional conduct. In this case, analogizing to *Lyons*, Plaintiffs would have to assert (1) that *all* members of the CERT team *always* violate an incarcerated inmate's constitutional rights during a shakedown or, (2) that the DOC ordered or authorized CERT officers to act in such manner. Plaintiffs fail to plausibly allege either. First, the Court has already dismissed claims against some members of CERT because Plaintiffs did not adequately allege that those CERT members violated Plaintiffs' constitutional rights. *See* D.I. 38. Also, Plaintiffs have failed to contend that all CERT officers always violate an

incarcerated inmate's constitutional rights during a shakedown. Second, Plaintiffs do not claim that the DOC ordered or authorized CERT officers to act in such a manner. In fact, Plaintiffs have alleged the opposite, namely that the CERT officers acted in violation of DOC policy. D.I. 4 at 17. Thus, Plaintiffs have failed to claim that the DOC ordered or authorized CERT officers to act in an unconstitutional manner.

Plaintiffs assert two legal theories for their standing argument, but both fail. D.I. 9 at 1-2. First, Plaintiffs cite Supreme Court language for the proposition that "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury." *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974). However, in context, this sentence is explaining that a past wrong can help a court determine the likelihood of the injury occurring again in the future. *See id.* (explaining that "the prospect of future injury rests on the likelihood that respondents will again be arrested for and charged with violations of the criminal law and will again be subjected to bond proceedings, trial, or sentencing before petitioners"). As explained above, one instance of a shakedown does not make it likely that Plaintiffs will experience one again.[2]

Second, Plaintiffs contend that *Lyons* does not apply where Plaintiffs can show that the harm is part of a pattern of "officially sanctioned . . . behavior, violative of the plaintiffs' [federal] rights." *Melendres v. Arpaio*, 695 F.3d 990, 998 (9th Cir. 2012). However, even if this Court were to accept this out-of-circuit legal framework, it would not change the outcome because

---

[2] "Past exposure to illegal conduct" can establish "a present case or controversy regarding injunctive relief" if accompanied by "continuing, present adverse effects." *O'Shea*, 414 U.S. at 495-96. However, Plaintiffs do not make such an allegation in their Preliminary Injunction briefs. Although the Complaint alleges that "Plaintiffs have a legitimate fear that such attacks will continue to take place" (Compl. ¶ 197), Plaintiffs cannot "manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Reading v. N. Hanover Township, New Jersey*, 124 F.4th 189, 198 (3d Cir. 2024) (citing *Clapper*, 568 U.S. at 416).

Plaintiffs have failed to allege a pattern of officially sanctioned behavior. Plaintiffs have not shown that the alleged harm is part of a pattern, and Plaintiffs have already alleged that the behavior violated DOC policy, meaning it was not officially sanctioned.

Lastly, Plaintiffs try to distinguish *Lyons* on two factual grounds, but neither attempt is successful. First, Plaintiffs assert that, since "Defendants steadfastly maintain that the CERT's uses of force were reasonable, [it demonstrates] that it is *likely* to be used in such a manner again." D.I. 9 at 2 (emphasis in original). However, this allegation does not show that a shakedown against Plaintiffs in the future is likely. In other words, Defendants' argument that the use of force from the shakedown was reasonable does not mean Defendants will do a shakedown again. Second, Plaintiffs point out that, unlike Lyons, "all Plaintiffs in this case are detained and controlled at all times by the Defendants." *Id.* Again, this fact does not show that Plaintiffs will experience a shakedown again and suffer an injury during a future shakedown. Thus, because Plaintiffs have failed to provide a clear showing that they are likely to experience a shakedown in the future and suffer an injury during a future shakedown, Plaintiffs lack standing for their proposed preliminary injunction.

**B.    Plaintiffs' Remaining Motions Are Moot**

In its Motion, Plaintiffs requested a Hearing. D.I. 3. Plaintiffs also filed a Moton for Expedited Discovery, in which Plaintiffs state the expedited discovery is necessary to "yield the lion's share of information necessary to conduct a full hearing on the Motion for a Preliminary Injunction." D.I. 18 at 2. Plaintiffs also filed a Motion to Consolidate Trial with a hearing on the Preliminary Injunction Motion. D.I. 19. Given the Court has denied Plaintiffs' Preliminary Injunction Motion, the remaining motions (D.I. 18 and D.I. 19) and the Request for Hearing (D.I. 3, part) are denied-as-moot.

## IV.    CONCLUSION

For the foregoing reasons, the Court denies Plaintiffs' Motion for a Preliminary Injunction (D.I. 3).  Plaintiffs' Request for Hearing, Motion for Expedited Discovery (D.I. 18), and Motion to Consolidate (D.I. 19) are denied-as-moot.  An Order consistent with this Memorandum Opinion will be entered.